IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAN JOOSTEN, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CHRIS WILLIAMS, BEACH VILLAS AT | § | |
| ORCHID BAY, INC., ORCHID BAY S.A., | § | |
| LLC, LEGACY GLOBAL DEVELOPMENT, | § | |
| LLC, JESSICA WILLIAMS, THE LIVING | § | **JURY DEMAND** |
| TRUST OF JESSICA ROSENBACH | § | |
| WILLIAMS, MICHAEL HARBUSHKA, and | § | |
| BUNGALOWS AT ORCHID BAY, INC., | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL PETITION
## AND
## APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff Dan Joosten files this Original Petition and Application for Preliminary Injunction against Defendants Chris Williams, Beach Villas at Orchid Bay, Inc., Orchid Bay S.A., LLC, Legacy Global Development, LLC, Legacy Global Sales, LLC, Jessica Williams, the Living Trust of Jessica Rosenbach Williams, Michael Harbushka, and Bungalows at Orchid Bay, Inc., and would respectfully show as follows:

### I. PARTIES

1.      Plaintiff DAN JOOSTEN is a resident of Harris County, Texas.

2.      Defendant CHRIS WILLIAMS ("Williams") is a California resident and may be served at his principal place of business, located at 3525 Del Mar Heights Road, Box 862, San Diego, CA 92130; his residence located at 14756 Via Mantova, San Diego, CA 92127 or wherever else he may be found.

3.      Defendant JESSICA WILLIAMS ("Jessica Williams") is a California resident and may be served at her residence and principal place of business, located at 3525 Del Mar Heights Road, Box 862, San Diego, CA 92130; her residence located at 14756 Via Mantova, San Diego, CA 92127; or wherever else she may be found.

4.      Defendant MICHAEL HARBUSHKA ("Harbushka") is a California resident and president of Legacy Global Development, LLC. He may be served at his principal place of residence, 7823 Doug Hill Ct, San Diego, CA 92127; his principal place of business, P.O. Box 7112, Rancho Sante Fe, CA 92067; or wherever else he may be found.

5.      Defendant BEACH VILLAS AT ORCHID BAY, INC. ("Beach Villas OB") is a California corporation whose entity status was suspended on November 23, 2021. It has no registered agent but may be served through its president or CEO, Chris Williams, at its principal place of business of 3525 Del Mar Heights Road #862, San Diego, CA 92130; or wherever else he may be found.

6.      Defendant ORCHID BAY S.A., LLC ("OB SA LLC") is a California limited liability company whose principal place of business is located at 3525 Del Mar Heights Road #862, San Diego, CA 92130. It may be served through its registered agent, Chris Williams, at 3525 Del Mar Heights Road #862, San Diego, CA 92130, or wherever else the registered agent may be found.

7.      Defendant BUNGALOWS AT ORCHID BAY, INC. ("Bungalows OB") is a California corporation whose entity status was suspended as of November 23, 2021. It may be served through its president or CEO, Chris Williams, at its principal place of business located at 3525 Del Mar Heights Road #862, San Diego, CA 92130 or wherever else the registered agent may be found.

8. Defendant LEGACY GLOBAL DEVELOPMENT, LLC ("Legacy Development") is a Delaware limited liability company whose principal place of business is located at 3525 Del Mar Heights Road #862, San Diego, CA 92130. Legacy Development may be served through its registered agent, A Registered Agent, Inc., located at 8 The Green, Ste. A, Dover, DE 19901.

9. Defendant LEGACY GLOBAL SALES, LLC ("Legacy Sales") is a California limited liability company whose principal place of business is located at 3525 Del Mar Heights Road #862, San Diego, CA 92130. It can be served through its registered agent, Chris Williams, at its principal place of business, located at 3525 Del Mar Heights Road, #862, San Diego, CA 92130, or wherever else the registered agent may be found.

10. Defendant THE LIVING TRUST OF JESSICA ROSENBACH WILLIAMS ("JRW Trustee") As Trustee, is the trustee of a California living trust. The JRW Trustee may be served through his/her/its registered agent for service of process, Chris Williams, at 3525 Del Mar Heights Road, Suite 862, San Diego, CA 92130; or wherever else she may be found.

11. "Defendants" referenced herein include Williams, Harbushka, Beach Villas OB, OB SA LLC, Bungalows OB, Legacy Development and Legacy Sales. Jessica Williams and JRW Trustee are referenced by name.

## II. DISCOVERY RULE

12. Plaintiff is relying on the discovery rule in association with his claims herein.

## III. JURISDICTION AND VENUE

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1), as Plaintiff is a Texas resident and all Defendants (and Jessica Williams and JRW Trustee) are residents of California. Venue exists in this District pursuant to 28 U.S.C. §1391(b)(2), as a

substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Defendants made affirmative misrepresentations directed at Plaintiff, a resident of the Southern District of Texas. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Transfirst Hldgs., Inc. v. Phillips*, 2007 U.S. Dist. LEXIS 14300 at *12–15 (N.D. Tex. Mar. 1, 2007).

## IV. FACTUAL BACKGROUND

14.     Defendants engaged in an elaborate Ponzi scheme whereby they duped investors into buying worthless stocks, disguised as a real estate purchase. Defendants promised to use money received from investors to build new houses pursuant to purchase sale agreement. In return for their investment, investors were to receive one share of Beach Villas OB, ownership of which granted them exclusive access to a specific villa, as purported by Defendants. Defendants represented to Plaintiff that his investment funds would be used to build Beach Villa #ONE ("Villa One") in Orchid Bay, where he would have exclusive access. Instead of using investor funds pursuant to the terms of the purchase sale agreement, Defendants used Plaintiff's funds to pay off some back taxes owed to the Belize Government, to fund Williams and Legacy Development's legal fees, and to make up for the Orchid Bay Homeowners Association's annual deficit. Instead of receiving the one share in Beach Villas OB and exclusive access to Villa One that Defendants promised him, Plaintiff's funds were diverted by Defendants to fund these undisclosed liabilities, leaving Plaintiff with nothing but a skeletal frame of Villa One

### A.     THE DEFENDANTS

15.     Williams is the OB SA LLC director, as well as its managing member. Williams is also the managing member and CEO of Legacy Development. From Legacy Development's inception through May 2021, Williams was also the managing member of Legacy Sales. In May

2021, Defendant Williams transferred his Legacy Sales managing member position to the Living Trust of Jessica Williams, which is currently the managing member of Legacy Sales. Jessica Williams is the controller of Legacy Global Sales, LLC. Legacy Sales and Legacy Development were organized on May 23, 2019. Beach Villas OB and Bungalows OB were incorporated on May 21, 2019. OB SA, LLC, the party that Plaintiff allegedly contracted with on August 29, 2019, was organized on October 22, 2019 three months after Plaintiff's initial investment.  None of this information was disclosed to Plaintiff prior to his investment. Plaintiff was unaware that all of the Defendant-entities were newly formed, just three months prior to Plaintiff investing $338,000.00 with Defendants and that the named contracting party, OB SA LLC did not even exist when Plaintiff invested and executed the purchase sale agreement.

### B.    THE OFFER & SALE

16.    In August 2019, Defendants sent Plaintiff, a Texas resident, a Purchase & Sale Agreement ("PSA") through email. This PSA offered to sell Plaintiff "a singular share of stock in BEACH VILLAS AT ORCHID BAY, INC. a corporation." The PSA asserted that "[t]he stock certificate acts as a type of grant deed that provides proof of ownership and exclusive access and use to the Villa." Plaintiff received the offer in Texas, accepted the offer in Texas and tendered the investment funds to Defendants from Texas. In Texas, Plaintiff also received several phone calls from Williams and Harbushka, wherein Williams and Harbushka, on their own behalf and on behalf of the other Defendants, promoted investment in Beach Villas OB. They represented that Defendants had ownership in the Orchid Bay land, and did not inform Plaintiff that Defendants only leased the land from the Belizean government. Defendants also represented that Plaintiff would purchase real estate in addition to one share of stock in OB SA, LLC. Plaintiff understood that he would be able to sell Villa One as an actual real estate

transaction. To date, there has been no conveyance of any real estate. Plaintiff had several meetings with Harbushka and Williams. Plaintiff met with Harbushka in Orchid Bay and toured the premises. During that time, Harbushka made the aforementioned representations as well as representing that he was the president of Legacy Development. Furthermore, Defendants also posted online advertisements in Texas for Beach Villas OB, which Plaintiff viewed and which induced the Plaintiff to reach out to Defendants for the purpose of investing.

17.     In the PSA, Defendants specifically listed a series of "milestones" for which Plaintiff's funds would be used. Section 1 of the PSA listed a base purchase price of $500,000 USD. It also listed several "options" that Plaintiff had accepted where additional funds would be used (*inter alia*) "[c]reate downstairs Master Bathroom & half-bath under stairwell" at a price of $15,000, "[a]dd [] upstairs 3rd bedroom" for $45,000, and "[a]dd [] Master Bathroom in upstairs 3rd bedroom" for $26,000. Section 2 of the PSA listed a series of milestones for which payments would be made; in relevant part, it provided that a $135,200 "structure deposit" would be due after the exterior walls and roof for the [Villa One] are completed." Each payment by Plaintiff was conditional on Defendants achieving specific construction targets for Plaintiff; funds would only become due *after* Defendants reached those targets. Section 4(b) of the PSA provided that Plaintiff's ownership interest in Beach Villas OB could not be sold or transferred without Plaintiff's consent, and imposed no restrictions on Plaintiff's ability to transfer that interest. On August 29, 2019, Plaintiff entered into the PSA with OB SA LLC.  In Texas, Plaintiff tendered $338,000 to Defendants pursuant to the PSA, and received an uncertificated "singular share of stock" in Beach Villas OB.

### C.      THE FRAUD: MATERIAL MISREPRESENTATIONS AND OMISSIONS

18.      In order to secure Plaintiff's investment, Defendants failed to inform Plaintiff of material information prior to his purchase of stock in Beach Villas OB. Defendant Legacy Development had not acquired ownership but merely leased development rights in Orchid Bay, a luxury real estate development in Corozal Town, Belize, in 2016. According to a recent federal petition filed by Legacy Development and Williams, there were significant unpaid back taxes owed to the Belize government that ranged somewhere between $300,000 to $4 million USD.[1] Defendants discovered these backed taxes were owed in the fall of 2016, yet did not reveal any of this information to unsuspecting investors, including Plaintiff in 2019.

19.      Defendants also failed to inform Plaintiff that they were involved in a complicated corruption scheme with the Belize Government to avoid the back taxes by recording an alleged bribe attempt. In fact, on August 24, 2019, Williams went undercover in Belize outfitted with a recording device to record a bribe session wherein Williams agreed to pay the recipient $350,000 BZD and actually paid $1,000 USD on that day. Five days later, on August 29, 2019, Plaintiff executed the PSA and invested $338,000 USD to purchase one share of stock in Beach Villas OB. A few weeks after Plaintiff's investment, Legacy Development paid over $600,000 BZD to the Belize Government to settle the back taxes dispute. At no point did any Defendant report this information to Plaintiff.

20.      Further, the existing residents at Orchid Bay had ongoing issues with Defendants: some Orchid Bay residents accused Williams of fraud and running a Ponzi scheme. These residents created a Facebook group wherein they discussed many of the issues regarding Defendants' management of Orchid Bay. These residents alleged, among other things, that their

---

[1] *See Williams v. Kula*, 2020 U.S. Dist. LEXIS 244769 at *2–3, 24 (S.D. Cal. Dec. 29, 2020).

funds were not being used pursuant to their terms of their agreement with Defendants, that Defendants were not submitting the annual accounting records to the homeowners' association and that Defendants, mainly Williams, were defrauding new investors and double selling property. In fact, many Orchid Bay residents created a Facebook group in order to warn new investors about Williams, and some Orchid Bay residents created "Stop the Orchid Bay Scam" t-shirts that stated "Chris Williams MUST GO" in hopes to deter future investors from Defendant's fraudulent scheme. In 2020, Williams filed a suit against these investors, and incurred apparently significant legal fees – fees that, upon information and belief, he paid from Plaintiff's funds. *See Williams v. Kula*, 2020 U.S. Dist. LEXIS 244769 at *2–3, 24 (S.D. Cal. Dec. 29, 2020). Again, Williams did not disclose Defendants' disputes with current Orchid Bay residents prior to Plaintiff investing $338,000, that Williams had sued those residents for allegedly "defaming" him prior to Plaintiff investing another $70,000, or that Williams intended to use Plaintiff's investment funds to pay Defendants' legal fees.

21.     Last, as stated above, all of the entities participating in the development of the Orchid Bay are newly formed undercapitalized entities. Most of the Defendant entities were formed just three months prior to Plaintiff executing the PSA and investing his initial $338,000. Worse, the contracting party, OB SA LLC, did not even exist when Plaintiff signed the PSA and invested $338,000; OB SA LLC was organized two months later in October of 2019. As a result, if Defendants encountered any type of financial trouble – such as the undisclosed tax liabilities and association deficits – Defendants would not be able to overcome those difficulties. Yet again, Defendants failed to inform Plaintiff of their newly created status, their undercapitalization, or the risk that they would be unable to fulfill their financial and tax

obligations. Additionally, Defendants failed to inform Plaintiff that they were not licensed or registered to sell securities, and that they would be taking undisclosed commissions.

**D.      THE RESULTS: DEFENDANTS' FAILURE TO DELIVER**

22.      In March of 2020, Defendants fell behind on the development of Villa One. Defendants claimed cash flow problems arising from the COVID-19 pandemic were responsible for Defendants' inability to timely complete construction. Defendants again did not inform Plaintiff of the back taxes, corruption, homeowner's association deficit, Orchid Bay residents' disputes with Williams, or Defendants' lack of experience and undercapitalization. Without disclosing such, Defendants, Williams, Legacy Global Development and Legacy Global Sales requested that Plaintiff alter investment milestones payments so that the construction would not delay on Villa One and make another investment payment. Relying on the information provided to him and on Defendants' omissions of information about their numerous problems, Plaintiff agreed to two Amendments to the PSA and invested another $70,000 USD, making his total investment $408,000. The first Amendment, effective April 15, 2020, simply attached the specifications and drawings for the construction of Villa One. The second Amendment, effective September 25, 2020, broke down the "structural deposit" into stages: OB SA LLC would be paid $30,000 after completing Villa One's 1st floor walls, $40,000 after completing Villa One's 2nd floor walls and floor, $50,000 after completing Villa One's 3rd floor walls and roof, and another $50,000 after installing all of Villa One's windows and doors.

23.      Despite giving Defendants additional time, additional funds, and an easier to meet milestone payment schedule, the development of Villa One did not progress. Although walls and a roof were partially installed, Villa One lay open to the elements and remained unfinished. Plaintiff visited his villa in December of 2021 and discovered that black mold had

developed throughout the villa as a result of this exposure and Defendants' failure to complete installation. On May 31, 2022, Defendants told Plaintiff that they would not be continuing to construct his villa – and that they would either resell the entire project to another buyer or allow a bank to foreclose on it. As a result, Plaintiff's entire investment in Beach Villas OB is gone without explanation. Plaintiff has no ability to resell his investment or hope of recouping that investment through rentals or other revenue streams.

### IV.    CAUSES OF ACTION

24.    Plaintiff brings this suit against Defendants under the Texas and California Securities Acts for securities fraud and the sale of non-exempt, unregistered securities, for fraud (both common-law and statutory), claims under the Fraudulent Transfers Act, conspiracy and claims for books and records and a request of an accounting. Plaintiff further asserts that Defendants that are corporate entities are alter egos of Defendant Chris Williams, as well as each other. Plaintiff moves to hold the Defendants jointly and severally liable for any and all damages.

### COUNT ONE: SECURITIES FRAUD UNDER THE TEXAS SECURITIES ACT

25.    Plaintiff's share in Beach Villas OB was a "security" under the Texas Securities Act. Plaintiff's share in Beach Villas OB is a security as defined by the Texas Securities Act. TEX. GOV'T CODE §4001.068(a)(1)(B) (West 2022); see also, TEX. REV. STAT. ART. 581-4(A). Plaintiff's share was one of fifty shares in the corporate association that controlled the Orchid Bay development, and gave him voting and other rights over that association per its bylaws. Plaintiff's share of Beach Villas OB, which he acquired pursuant to the PSA, is an investment contract. *Id.* §4001.068(a)(1)(O). Because Plaintiff's investment was pooled (without his knowledge) with that of other investors, his investment "involve[d] an investment of money in a common enterprise." *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946). Plaintiff's investment

was to succeed "solely from the efforts of others" – namely, Defendants' construction and management of the Orchid Bay subdivision, including Villa One. *Id*. Plaintiff expected "profits" from those efforts: namely, "capital appreciation resulting from the development" of his invested funds when he resold Villa One (and the stock share it represented) at a later date to collect the equity accumulated from such ownership., as represented by the increased value of the stock share to be sold by Plaintiff. *Cf. United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53, 858 (1975) (ownership in part of non-profit cooperative, entitling holder to personally use apartment, not a "security").

26.     "A person who offers or sells a security . . . is liable to the buyer of the security . . . if the person offers or sells the security by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statement[] made . . . not misleading." TEX. GOV'T CODE §4008.052(a) (West 2022); *Khoury v. Tomlinson*, 518 S.W.3d 568, 582 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (applying prior, substantively-identical version of Texas Securities Act). Additionally, "a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). Here, Defendants Williams, Beach Villas OB, OB SA LLC, Legacy Development and Legacy Sales made material misrepresentations and omissions in order to secure Plaintiff's investment. These materially false or misleading statements and omissions are:

a.  Promising that Plaintiff's investment would be used to build Villa One, when Defendants intended to pool that investment;

b.  Promising that OB SA LLC, the signatory to the PSA, existed when it did not actually exist at the time Plaintiff invested $338,000.00 and executed the PSA;

c.  Omitting the fact that Plaintiff's investment would be used to pay Defendants' back taxes, legal fees, amounts owed by the Orchid Bay homeowners' association, and other costs unrelated to Plaintiff's investment;

d.  Defendants' failure to pay the back taxes owed on Orchid Bay to the Belize Government;

e.  Defendants did not explain how they were involved in criminal extortion, even when Williams participated in a covert operation days before accepting Plaintiff's investment;

f.  Defendants did not have the experience or expertise in working with the Belize government and other Belize entities to complete Villa One;

g.  Defendants were newly formed entities;

h.  Defendants would be unlicensed and unregistered broker dealers for the purpose of selling securities and still receive an undisclosed commission off the Plaintiff's investment;

i.  Defendants' ongoing disputes with other Orchid Bay residents;

j.  The Orchid Bay homeowners' association's annual deficit and corruption payments; and

k.  Defendants' lack of capitalization, total lack of experience in construction and subdivision management.

27.    If Defendants had disclosed the truth regarding what they intended for Plaintiff's investment funds, Defendants' actual situation and circumstances surrounding the investment as described above, Plaintiff would not have purchased the one share of Beach Villas OB. Defendants purposefully misrepresented and withheld such information in order to secure

Plaintiff's investment funds. Plaintiff relied on the omissions and the statements made by Defendants, the advertising material and the statements in the PSA to his detriment. As a result, Plaintiff lost $408,000.00 USD. Additionally, the PSA is not enforceable as it is procured by fraud in violation of TEX. REV. CIV. STAT. ART. § 581-33(A)(1) and TEX. GOV'T CODE §4008.052(a), and is therefore void. TEX. REV. CIV. STAT. ART. § 581-33(K); TEX. GOV'T CODE §4008.001 (West 2022).

**COUNT TWO: SECURITIES FRAUD UNDER THE CALIFORNIA SECURITIES ACT**

28.     Defendants' sale of shares of Orchid Bay while they resided in California also violated the California Securities Act. The California Securities Act (CSA) provides that an offer for the sale of a security is "made in this state" if "the offer [] originates from this state." CAL. CORP. CODE §25008(a)–(b) (Deering 2022). An offer for the sale of a security is accepted "in this state when the offeree directs it to the offeror in this state . . . and it is received at the place to which it is directed." Id. §25008(b) (emphasis added). The stock issued in this case is a security as defined by the California Securities Act. A "[s]ecurity" means any "note; stock; treasury stock; membership in an incorporated or unincorporated association…; certificate of interest or participation in any profit–sharing agreement; … transferable share; investment contract; …" CAL. CORP. CODE § 25019 (Deering 2022).

29.     Like the Texas Securities Act, the CSA makes it "unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made . . . not misleading." CAL. CORP. CODE §25401, et al. (Deering 2022). The same misrepresentations and omissions that violate the Texas Securities Act (as described in Count One, and incorporated herein by reference) also violate the California Securities Act. That

violation caused the same damages to Plaintiff: namely, the loss of $408,000 of his invested funds. Defendants also violated § 25501 for the omissions and misrepresentations. CAL. CORP. CODE §25501 (Deering 2022).

30.    Defendants are also liable under §25501.5 for selling a security without a license or registration. CAL. CORP. CODE §25501.5 (Deering 2022). Additionally, Defendants are jointly and severally liable under §25504. CAL. CORP. CODE §25504 (Deering 2022).

### COUNT THREE: SALE OF UNREGISTERED, NON-EXEMPT SECURITIES IN VIOLATION OF THE TEXAS SECURITIES ACT

31.    The TSA requires anyone who sells securities in Texas to register those securities with the Texas State Securities Board, unless an exemption applies. TEX. GOV'T CODE §4003.001(a) (West 2022); *see also*, TEX. CIV. STAT. ART. 581-12(A), 581-33(A). Defendants did not register either their shares of Beach Villas OB with the Texas State Securities Board, the Securities and Exchange Commission, or any other regulator of securities. Defendants failed to qualify the relevant securities in this case for any exemption. Defendants thereby violated the Texas Securities Act by selling non-exempt unregistered securities.

32.    The TSA also prohibits anyone from acting as a dealer in securities or investment advisor, or as an agent or representative of a dealer or investment advisor, without registering with the state. *Id*. §§4004.051–52, 4004.101–02; *see also* TEX. CIV. STAT. ART. 581-12(A), 581-33(A). Defendants did not register themselves as a dealer, investment advisor, agent, or representative with the state of Texas. Again, Defendants violated the Texas Securities Act by dealing securities without being registered. Again, because Defendants failed to register or qualify the securities for an exemption, the PSA is unenforceable pursuant to Tex. Rev. Civ. Stat. art. §581-333(K)/TEX. GOV'T CODE §4008.001.

33.     Williams is liable as a control person of Defendants OB SA LLC, Beach Villas OB, Legacy Sales, and Legacy Development. "A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable . . . jointly and severally with the seller, buyer or issuer, and to the same extent as if he were the seller, buyer, or issuer." TEX. GOV'T CODE §4008.055(a) (West 2022). Williams has been the managing member and director of OB SA LLC, and the managing member and CEO of Legacy Development and Legacy Sales, at all times relevant to this case (including today). Williams was the managing member of Legacy Sales until May 2021, when his wife's trust or JRW Trustee became the managing member. Williams is also the control person for Beach Villas OB, wherein its entity status was suspended on November 23, 2021. Williams is therefore liable as a control person for Counts One, Three, and Five to the same extent each of these defendants are.

## COUNT FOUR: SALE OF UNQUALIFIED, NON-EXEMPT SECURITIES IN VIOLATION OF THE CALIFORNIA SECURITIES ACT

34.     Like the TSA, the CSA requires sellers of securities to register or "qualify" securities sold from the state of California with the state of California, unless an exemption to qualification applies. CAL. CORP. CODE §25110 (Deering 2022). Defendants did not qualify their shares of Beach Villas OB, and failed to qualify for any of the statutory exceptions that might have applied to those shares. As a result of Defendants' failure to qualify or obtain an exemption, Defendants may be held liable to Plaintiff for selling a share of Beach Villas OB to him in violation of the CSA. *Id.* §25503.

35.     The CSA, like the TSA, also requires agents and broker-dealers who attempt to sell securities while in the state of California to register with the state prior doing so. *Id.* §25210(a)–(b). Again like the TSA, the CSA permits private parties to sue dealers of securities

who sell securities without a license. *Id*. §25501.5(a). Defendants did not obtain a license to sell securities while in the state of California, and thereby violated this section.

## COUNT FIVE: VIOLATION OF TEX. BUS. & COMM. CODE §27.01

36.     The same material misrepresentations and omissions that constituted securities fraud under the Texas Securities Act also violate Texas Business & Commerce Code §27.01 as fraud in a stock transaction. TEX. BUS. & COM. CODE ANN. §27.01. Under this claim, Defendants are liable for the fraud in the transaction involving stock in a corporation due to the false representation of a material fact or false promise to do an act. Defendants at the time had no intention of fulfilling their obligations owed to Plaintiff, made the representations with the intent that Plaintiff enter into the PSA. and that Plaintiff relied on the false promises when entering into the PSA.

37.     Under Texas law, statutory fraud occurs "in a transaction involving real estate or stock in a corporation" – which includes Plaintiff's purchase of a share of Beach Villas OB and its associated right of exclusive access to Villa One. TEX. BUS. & COM. CODE §27.01(a) (West 2022). Statutory fraud occurs when a person makes a false promise to do an act that is material, made with the intention not to fulfill it, made to a person to induce him to enter into a contract, and relied on by that person in entering the contract. *Id*. §27.01(a)(2). Here, Defendants promised that they would only use Plaintiff's investment to build Villa One. That promise was false, as Defendants had outstanding back taxes that – at the time of the promise – they intended to pay using Plaintiff's funds. That false promise was material and relied upon by Plaintiff: Plaintiff would not have invested any funds with Defendants had he known Williams and OB SA LLC intended to or would use his funds for purposes other than his investment. As a result, Plaintiff's entire investment of $408,000 has been lost.

## COUNT SIX: COMMON-LAW FRAUD

38.     The same material misrepresentations and omissions that constituted securities fraud under the Texas Securities Act also constitute common-law fraud. Under Texas law, "[a] common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). Here, Williams and OB SA LLC affirmatively misrepresented that Plaintiff's investment only would be used to build Villa One, instead of being pooled with other investors' funds or being used to pay Defendants' back taxes, legal fees, amounts owed by the Orchid Bay homeowners' association, costs associated with corruption demands and other costs unrelated to Plaintiff's investment. That misrepresentation was material: Plaintiff would not have invested any funds with Defendants had he known Williams and OB SA LLC intended to or would use his funds for purposes other than his investment. Williams and OB SA LLC knew their promise was false when made, had no intention to perform as promised, and intended Plaintiff to rely on their promise to develop Villa One in order for Plaintiff invest funds with them. Plaintiff relied on such misrepresentations and invested his money with Defendants. As a result, Plaintiff's entire investment of $408,000 has been lost.

39.     Under Texas law, fraud by non-disclosure requires: (1) a deliberate failure to disclose material facts; (2) a duty to disclose; (3) that the plaintiff was ignorant and did not have an equal opportunity to discover; (4) that the defendant intended the plaintiff to act or refrain from acting; and (5) injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019). Even in an arms-length transaction, a duty to disclose exists

where the speaker "(1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Id.* at 220. Williams and OB SA LLC deliberately failed to disclose the following material facts: (1) that Williams participated in a covert operation days before Plaintiff signed the PSA; (2) that Orchid Bay was subject to outstanding back taxes amounting somewhere between $300,000 USD to several million USD; (3) that Williams was engaged in an ongoing dispute with existing Orchid Bay residents over his alleged mismanagement; and (4) that Defendants had no experience and were undercapitalized, prohibiting them from surviving any significant financial disruption. Plaintiff did not know, could not have known or had no reason to know of these facts that Defendants failed to disclose. Defendants intended Plaintiff to rely on the language of the PSA, which did not disclose these material risks and information, so that Plaintiff would invest. Plaintiff relied on those omissions and was damaged as a result in the amount of $408,000 USD.

## COUNT SEVEN: FRAUDULENT TRANSFERS IN VIOLATION OF UNIFORM TRANSFERS ACT (UFTA)

40.     A transfer made by a debtor is fraudulent when made without receiving a reasonably equivalent value in exchange, where the debtor engaged in business for which his remaining assets were unreasonably small or where the debtor intended to, believed he would, or reasonably should have believed he would incur debts beyond his ability to pay. TEX. BUS. & COMM. CODE §24.005(a)(2) (West 2022); CAL. CIV. CODE §3439.04(a)(2) (Deering 2022). Upon information and belief, Defendant Williams used his position as the director, president, CEO and managing member of the other Defendants to transfer funds from Defendants to the JRW Trust or Jessica Williams without receiving reasonably equivalent value in exchange. Upon information and belief, these transfers were conducted from on or about May 1, 2021 to the

present day, under the guise of "salary" payments, commissions and/or consulting fees to the JRW Trust as manager of Legacy Sales or directly to Jessica Williams.

41. Williams did so while the other Defendants were engaged in business – the management and construction of Orchid Bay, including Villa One – for which its remaining assets were unreasonably small. Williams did so while intending and believing that the other Defendants would incur debts beyond their ability to pay as they came due. Consequently, Defendant Williams (for causing the transfers to occur), the other Defendants (the debtor(s)), and JRW Trust/Jessica Williams (for accepting the transfers) are each liable for these transferred sums, which should be avoided to the extent necessary to satisfy Plaintiff's claims against Defendants, JRW Trust and Jessica Williams. *See* TEX. BUS. & COMM. CODE §24.008(a)(1)–(2) (West 2022); CAL. CIV. CODE §3439.07(a)(1)–(2) (Deering 2022).

## COUNT EIGHT: CONSPIRACY

42. Under Texas law, civil conspiracy requires that two or more persons have a meeting of the minds where they agree on an objective or course of action, and at least one of them takes an unlawful, overt act to pursue that objective or course of action, which proximately causes damages. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Here, Williams, Jessica Williams and the JRW Trust had a meeting of the minds to fraudulently transfer funds from the remaining Defendants to the JRW Trust. These Defendants did so with the unlawful objective of preventing third parties, including Plaintiff, from potentially recovering funds as a result of Williams' fraudulent acts. These Defendants acted to further this conspiracy by making the fraudulent transfers described in Count Seven. Plaintiff was harmed by this conspiracy because the absence of funds in these entities prevented Plaintiff's Villa from being constructed, despite his paying for that construction, and ultimately Defendants' abandonment of the project without explanation as to where the $408,000 investment went.

43.     Additionally, the JRW Trust and Jessica Williams conspired with Williams to conceal Williams' continuing fraud on Plaintiff, as well as other investors. These Defendants had a meeting of the minds as to this conspiracy in May 2021, when the JRW Trust became the managing member of Legacy Sales. In this meeting of the minds, these Defendants pursued the unlawful objective of preventing Plaintiff from learning of Williams' fraud, and in hopes of obtaining additional invested funds from Plaintiff. These Defendants jointly took an unlawful, overt act in furtherance of this conspiracy by providing false reports to Plaintiff, on or about June 1, 2021, by providing false information to Plaintiff about the progress and expected results of the construction of Villa One, and indicating that Plaintiff would need to pay an additional $50,000 shortly, when in reality they were siphoning funds away from Plaintiff's investment into their own bank accounts. Plaintiff was harmed by this conspiracy because he was forced to reserve funds that he could have used for other purposes to cover this supposed liability.

## COUNT NINE: BOOKS, RECORDS, AND ACCOUNTING

44.     Pursuant to Cal. Corp. Code §1601, a shareholder has a right to access the corporate financial records and inspect the accounting books and records. As a shareholder of Beach Villas OB, Plaintiff demands an accounting of Beach Villas OB's books and records.

## V. ALTER EGO

45.     Defendants were underfunded and operated with Williams in total control. Williams used these entities to commit fraud and wrongdoing that injured Plaintiff, who seeks to pierce the corporate veil. None of the Defendant companies had legal or independent significance on their own, their funds were commingled with each other, commingled with Williams' personal funds, and used to fund other projects not related to the Plaintiff's investment and were ultimately received by Williams' wife, Jessica Williams, either directly or through the JRW Trustee.

## VI.    JURY DEMAND

46.    Plaintiff hereby demands trial by jury.

## VII.    APPLICATION FOR PRELIMINARY INJUNCTION

47.    Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiff requests the Court grant Plaintiff injunctive relief enjoining Defendants from selling the Orchid Bay property. A court should grant injunctive relief when a plaintiff establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Each of these factors must be considered to determine whether, on balance, they collectively favor granting the injunction." *DSC Comms. Corp. v. DGI Techs., Inc.*, 898 F. Supp. 1183, 1187 (N.D. Tex. 1995), *aff'd*, 81 F.3d 597 (5th Cir. 1996). As all four factors favor prohibiting Defendants from selling the Orchid Bay property, Plaintiff is entitled to – and the Court should grant – this preliminary injunctive relief, to preserve the *status quo* pending resolution on the merits.

### A.  Plaintiff has a substantial likelihood of success on the merits of his claims.

48.    To establish his entitlement to a preliminary injunction, Plaintiff must present a *prima facie* case; however, he need not prove his entitlement to summary judgment. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013). As the remainder of this Petition makes clear, Plaintiff has a substantial likelihood of success on the merits. Defendants sold Plaintiff a share of stock which provided access rights to a specific piece of real property – a "security." *Supra* ¶¶14, 25. That security was not registered as required by law, and Defendants had no exemption to sell it. *Supra* ¶¶31–36. Under the agreement by which they sold the security, Defendants promised to achieve certain milestones to construct a usable

villa for Plaintiff – which they have now declared they cannot and will meet. *Supra* ¶¶22–23. Those promises were material to Plaintiff's investment, and Defendants intended Plaintiff to rely on them – which he did, to his detriment. *Supra* ¶¶17, 23. Moreover, Defendants knowingly withheld – and often deliberately distorted – information that was material to Plaintiff's investment, which would have revealed their duplicity if known. *Supra* ¶¶18–21. Plaintiff invested some $408,000 based on Defendants' false promises and material misrepresentations – a reliance that was justifiable given what he knew at that tie. *Supra* ¶19. Plaintiff therefore has a substantial likelihood of success on his claims for fraud, securities fraud, and violations of securities laws (in Counts One through Six) that support the requested injunction.

**B. Plaintiff will suffer irreparable harm if the injunction is not granted.**

49.     "Harm is irreparable where there is no adequate remedy at law, such as monetary damages. However, the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 651 (N.D. Tex. 2021). Where "a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Moreover, "[t]he deprivation of an interest in real property constitutes irreparable harm." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012).

50.     Here, Defendants have threatened to sell the real property – including Villa One – which underlies Plaintiff's investment. If that real property is sold, Plaintiff will have to proceed separately in Belizean courts (as to the real property) and in the United States (as to the security to which it is linked), causing a multiplicity of actions. Moreover, the sale of the Orchid Bay

property would render a meaningful decision on the merits impossible. The sale of Orchid Bay to a new developer would destroy the most critical evidence in the case – the vacant, largely unfinished property itself. That sale would also preclude Plaintiff from obtaining an adequate remedy, as Plaintiff's rights in Villa One – the real property for which he bargained – would be lost, with no guarantee that any subsequent holder would honor those rights. Monetary damages – though necessary to compensate Plaintiff for his harm – would be insufficient alone to provide him with an adequate remedy at law, supporting the issuance of an injunction.

### C. The balance of equities favors Plaintiff.

51.     In weighing equities, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Texas v. United States*, 524 F. Supp. 3d 598, 663 (S.D. Tex. 2021). Where the equities are evenly balanced between the parties, the court may grant a preliminary injunction. *M-I LLC v. FPUSA, LLC*, 2015 U.S. Dist. LEXIS 149160 at *37 (W.D. Tex. Nov. 4, 2015) (citing *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457–58 (Fed. Cir. 1988)). In this analysis, "[t]here is no merit to the position that 'your money that I got fraudulently has been passed on, therefore you cannot effectual a refund out of my money that I made legally.'" *Wells Fargo Bank, N.A. v. BMM Welding USA, Inc.*, 2021 U.S. Dist. LEXIS 62857 (S.D. Tex. Feb. 11, 2021). Here, the balance of equities favors Plaintiff: any harm to Defendants arising from the injunction will be temporary and compensable through monetary damages, while Plaintiff's harm will be permanent and non-compensable. If Plaintiff's requested relief is denied, Defendants will be able to sell the Orchid Bay property at will, leaving Plaintiff without a remedy. Defendants – as noted elsewhere in this Petition – can and likely will transfer any funds resulting from such transfers beyond Plaintiff's reach. *See supra* ¶¶40–41. Conversely, if Plaintiff's requested relief is granted, Defendants will

only be prevented from selling the Orchid Bay development for the duration of the case. If Defendants retain control of that property after Plaintiff's suit is concluded, Defendants will be able to sell the property at that time. Thus, the balance of equities favors Plaintiff and the requested injunction.

**D. An injunction would be in the public interest.**

52.     "[T]he public interest factor requires the court to consider what public interests might be injured and what public interests might be served by granting or denying a preliminary injunction." *Texas v. U.S.*, 524 F. Supp. 3d at 663. The public interest favors the enforcement of contracts, including contractual remedies provided by Texas law. *See Daily Instr. Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014); *Emergy v. Sun Cupid Tech. (HK) Ltd.*, 2020 U.S. Dist. LEXIS 241782 at *38 (N.D. Tex. Dec. 23, 2020) (mem. op.). Conversely, the public interest disfavors the continuation of securities fraud, including indirectly. *See SEC v. Sethi Petro. LLC*, 2020 U.S. Dist. LEXIS 102231 at *53–54 (E.D. Tex. Jan. 22, 2020) (mem. op.) (injunction sought by defendant for return of SEC-seized property in securities-fraud action). Here, Defendants have dishonored their agreements with Plaintiff, which the public interest supports enforcing; Defendants are also engaged in securities fraud using those funds, which the public interest supports stopping. *See supra* ¶¶22–23. Defendants' disputes with other Orchid Bay investors and Belizean tax authorities show that the public interest – including that of any potential seller – favors an injunction so all such disputes can be resolved before yet another third party is hurt by Defendants' ongoing malfeasance. *See supra* ¶¶19–20.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and order against Defendants, jointly and severally, and requests that this Court award the following:

a. A preliminary injunction preventing Defendants from selling the Orchid Bay property;

b. Rescission or monetary damages;

c. Reasonable attorney fees and costs as permitted under law;

d. A declaration that all Defendants are alter egos of one another;

e. Joint and several liability;

f. Pre-judgment and post-judgment interest at the maximum legal rate; and

g. Any and all other relief to which Plaintiff may prove he is justly entitled.

Date:  July 21, 2022                    Respectfully submitted,


                                        THE SPENCER LAW FIRM

                                        ___/s/ Loren M. King___
                                        Loren M. King, IV (attorney-in-charge)
                                        Texas Bar No. 24078789
                                        FID No. 2441702
                                        Email: lking@spencer-law.com
                                        T. Ryan Lemens
                                        Texas Bar No. 24109463
                                        FID No. 3381606
                                        4635 Southwest Freeway, Suite 900
                                        Houston, Texas 77027
                                        Telephone: 713-961-7770
                                        Fax: 713-961-5336

                                        **ATTORNEYS FOR PLAINTIFF**